UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. DANIEL SIMONS, Defendant. | Case No.:  3:25-cr-02444-JAH **ORDER ON THE PARTIES' MOTIONS IN LIMINE** **ECF Nos. 33, 34, 38, 39, 43, 44** |

Before the Court are the Parties' motions in limine, filed pursuant to the above-captioned case.

## **LEGAL STANDARD**

There is no express authority in either the Federal Rules of Civil Procedure ("FRCP") or the Federal Rules of Evidence ("FRE") for motions in limine, but such motions are recognized in practice and in case law.  *See Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *United States v. Cook*, 608 F.2d 1175, 1186 (9th Cir. 1979).  Authority for these motions may also be implied through "the court's inherent power to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered."  *Id.* at 40 n.2.  The purpose of a motion in limine is to avoid the futile attempt to "unring the bell" when highly prejudicial evidence is offered

1

3:25-cr-02444-JAH

and then stricken at trial. *See McEwen v. City of Norman, Okla.*, 926 F.2d 1539, 1548 (10th Cir. 1991). The trial court has broad discretion to grant or deny motions in limine and the decision is rarely disturbed on appeal. *See United States v. Rambo*, 74 F.3d 948, 955 (9th Cir. 1996); *Galindo v. Tist*, 971 F.2d 1427, 1429 (9th Cir. 1992). A decision on a motion in limine is not binding on the trial judge; the decision may be altered based on evidence presented at trial. *See Ohler*, 529 U.S. at 758. Thus, an objection may be made, or the evidence may be offered, at trial even if it falls within the scope of the court's in limine ruling. *See United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989).

## DISCUSSION

## I. UNITED STATES OF AMERICA'S MOTIONS IN LIMINE

### 1. Admit Coconspirator Statements

#### i. Unidentified Coconspirator Statements

The Government seeks to admit statements from Defendant's coconspirators—Knack Media, True Help, William Leonard, and Terry Patton—pursuant to FRE 801(d)(2)(E) as opposing party statements. USA MILs at 8. With one exception, the Government does not specifically identify the statements it seeks to admit, and the parties AGREE the Court should DEFER ruling on the admission of unidentified coconspirator statements under Rule 801(d)(2)(E) until the statements are identified.

But, as the Government suggests, a "district court need not make a determination, prior to the introduction of the statement, [on] whether the proposed statement complies with Rule 801(d)(2)(E)." *United States v. Rocha*, 916 F.2d 219, 239 (5th Cir. 1990). Rather, district courts may exercise their discretion to allow the government to introduce coconspirator statements and wait until the United States' case is complete before determining the admissibility of such statements. *See United States v. Arbelaez*, 719 F.2d 1453, 1460 (9th Cir. 1983); *United States v. Bourjaily*, 781 F.2d 539, 542 (6th Cir. 1986), *aff'd*, 483 U.S. 171 (1987).

2

3:25-cr-02444-JAH

Accordingly, the Court will allow the Government to introduce coconspirator statements at trial from the four named coconspirators—Knack Media, True Help, William Leonard, and Terry Patton—but **RESERVES** ruling on the admissibility of those statements until the Government concludes its case-in-chief. The Court also **RESERVES** ruling on any specific objections to coconspirator statements. The Court may permit a witness to testify related to any statements made by alleged coconspirators on the condition that the Government ultimately establishes the existence of a conspiracy, and subject to Rule 106, if applicable.

ii. February 26, 2020 Messages between Defendant and Terry Patton

As to the excerpts of a February 26, 2020, text conversation between Defendant and Terry Patton in which Defendant states "Only 2 for 1," the Court AGREES with the Government that the statements are admissible as coconspirator statements under Rule 801(d)(2)(E). USA MILs at 8. The Court REJECTS Defendant's argument, pursuant to Rules 403 and 106, that the messages are likely to mislead the jury because "contemporaneous records clearly show that [Defendant] declined to accept the patient at all." Def. Opp'n at 8-9. Even if Defendant's facility did not accept a particular patient due to criteria important to Defendant, such as the patient having a certain insurance policy, the evidence is being offered to show how Defendant tracked the number of patients referred to him by coconspirators based upon quotas that depended on the type of insurance policy and the oral agreements with the coconspirators. Thus, the Court finds the evidence relevant and probative of the Government's theory of the case.

Accordingly, the Court **GRANTS** the Government's motion to admit the excerpts of the February 26, 2020, text conversation between Defendant and Terry Patton pursuant to Rule 801(d)(2)(E), subject to the Government having presented a full transcript of the text communication to Defendant.

3

**2. Admit Properly Noticed Expert Evidence from SSA Stewart[1]**

The Government seeks to offer expert testimony from FBI Supervisory Special Agent William Stuart "concerning the modus operandi of substance use disorder treatment operators paying kickbacks to [coconspirators] for their efforts to find, recruit, and refer patients." USA MILs at 11. According to the Government, this testimony is necessary to help the jury decide whether Defendant's conduct, which "may seem fairly run-of-the-mill in the business world," was meant to "conceal his illegal conduct." ECF No. 43 ("USA Reply") at 3. The Government argues SSA Stuart is qualified under Rule 702 to provide such testimony based on his training and experience "with a variety of schemes involving the payment of kickbacks to body brokers" through his "expertise on the modus operandi of such schemes." USA MILs at 10.

Defendant objects generally to expert testimony from SSA Stewart in its entirety, arguing that, under the facts of the instant case, the Government has not established a need for expert testimony to explain how criminal body broker schemes work, nor articulated a sufficient basis, under Rule 702, for the Court to find SSA Stewart's testimony is reliable. Def. Opp'n at 9-12.[2] Alternatively, Defendant has also moved to limit SSA Stewart's testimony based on specific objections to portions of SSA Stewart's testimony. *Id.*; *see also* Def. MILs at 9-18.

  i.   Exclusion of SSA Stewart's Expert Testimony in Its Entirety

As an initial matter, the Court rejects Defendant's general arguments seeking to exclude expert testimony from SSA Stewart in its entirety. It is well-established under Ninth Circuit caselaw that for modus operandi experts, "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it."

---

[1] For the reasons discussed *infra*, the Court DENIES Defendant's first motion in limine which seeks to limit SSA Stewart's expert testimony.

[2] Defendant incorporates by reference the arguments and objections in his first motion in limine moving to limit SSA Stewart's testimony. *See* Def. MILs at 9-18.

3:25-cr-02444-JAH

*United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000). Here, SSA Stewart's training and experience includes, *inter alia*, 11 years of experience "work[ing] on criminal investigations involving healthcare fraud and related offenses," his specialization from 2014 to 2021 "in investigations involving addiction treatment facilities, in particular those involving anti-kickback violations and violations of EKRA" and the modus operandi of such schemes, and "serv[ing] as a lead case agent for investigations [in] at least 80 such facilities" and "assist[ing] in a wide variety of other investigations, targeting several drug addiction treatment facilities and body brokers." *Id.* 9-10. The Court finds such training and experience is both relevant, under the facts of this case, and sufficiently reliable "to provide a reliable basis for [SSA Stewart's] expert opinions" as to the modus operandi of schemes involving the payment of kickbacks to coconspirators, such as those alleged here. *Hankey*, 203 F.3d at 1168.

The Court also finds the Government has presented a sufficient basis, under the facts of this case, to admit testimony regarding the "modus operandi of substance use disorder treatment operators paying kickbacks to [coconspirators] for their efforts to find, recruit, and refer patients." As the Government argues, the Ninth Circuit has long held that "government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi." *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir. 1984). Such testimony "alerts [the jury] to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1244 (9th Cir. 1997). Here, the Court agrees that modus operandi testimony is proper to help the jury decide whether Defendant's conduct was "fairly run-of-the-mill in the business world" or meant to "conceal his illegal conduct." USA Reply at 3. Specifically, as the Government argues, SSA Stuart's testimony will help the jury determine whether:

> [Defendant] entered into what appeared to be facially valid contracts for marketing and consulting services with his co-conspirators, where he agreed to pay them a flat rate of thousands of dollars per month. But those payments were instead contingent on a [separate] verbal agreement setting

a minimum number of "units" of patients that his co-conspirators sent him based on an assessment by the conspirators of the value of such patients' insurance coverage.

*Id.* Moreover, that SSA Stewart was not a case agent in this case alleviates any concerns that arise in other cases where a case agent presents dual testimony as both a fact witness and an expert witness. *See, e.g.*, *United States v. Freeman*, 498 F.3d 893, 901-06 (9th Cir. 2007) (discussing concerns regarding a case agent presenting dual testimony as both a fact witness and an expert witness on drug jargon).

Accordingly, the Court REJECTS Defendant's arguments seeking to exclude SSA Stewart's testimony in its entirety and **GRANTS** the Government's motion to admit SSA Stewart's expert testimony, subject to objections by Defendant at trial once the testimony is offered. The Court will also permit Defendant, if he so chooses, to cross-examine SSA Stewart at trial on the issue of reliability before the jury prior to the Court declaring SSA Stewart as an expert witness.

ii. Defendant's Motion to Limit SSA Stewart's Expert Testimony

Defendant's first motion in limine also seeks to limit the majority of SSA Stewart's expert testimony based on specific objections to portions of the proffered testimony. Def. MILs at 9-21. Defendant describes the challenged evidence as falling into three broad categories—"generalized testimony concerning knowledge and intent of individuals engaged in EKRA schemes and modus operandi to avoid law enforcement detection;" "Generalized testimony concerning insurance reimbursement structure;" and impermissible legal opinions—and objects to the challenged testimony being inadmissible as irrelevant, unhelpful to the jury, unreliable, and unfairly prejudicial. *Id.*

First the Court rejects Defendant's primary objection that the challenged testimony is inadmissible under Rule 702.

Here, Defendant argues that the challenged testimony usurps the role of the jury because it invites the jury to infer guilt by matching the evidence to a generalized scheme narrative, and offers legal conclusions and unfairly prejudicial characterizations. *Id.*

6

3:25-cr-02444-JAH

Specifically, Defendant argues that presenting testimony as to the "supposed hallmarks of kickback schemes—such as verbal agreements that differ from written contracts, tracking of patient referrals, and reconciling payments based on patient value"—in a manner that mirrors the government's theory of the case "effectively instructs the jury on how to interpret ordinary evidence and encourages an improper guilt-by-pattern inference." *Id.* Defendant also argues that SSA Stewart's characterization of payments as "kickbacks" and of industry participants as "corrupt" constitutes improper legal conclusions and prejudicial labels. *Id.*

However, Defendant asserts his objections based on cases with facts not present here. For example, Defendant cites to *United States v. Freeman*, 498 F.3d 893, 901-06 (9th Cir. 2007), which involved concerns about a case agent presenting dual testimony as both a fact witness and an expert witness on drug jargon. But such is not the case here as SSA Stewart is neither a dual fact and expert witness, nor the case agent testifying as to the facts at issue in this case. Similarly, Defendant's reliance on *United States v. Mejia*, 545 F.3d 179, 191-96 (2d. Cir. 2008), is also misplaced, as that case involved an expert's improper summation of the facts at issue in that case. Moreover, neither of those cases addresses expert modus operandi testimony. Thus, the Court REJECTS Defendant's argument that the proffered testimony by SSA Stewart risks improperly usurping the role of the jury.

Next, Defendant argues the challenged testimony is inadmissible under Rule 702 because it is unreliable and not based on sufficient facts or data. Def. MILs at 13-15. Here, the Court adopts its reasoning rejecting Defendant's general objections on the same grounds. In addition, Defendant's reliance on *United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020) is inapplicable here for two reasons. First, *Valencia-Lopez* took issue with a drug trafficking modus operandi expert's previously un-noticed opinion testimony that the chance a drug cartel would use a coerced courier was "[a]lmost nil, almost none." Here, as Defendant has noted, SSA Stewart's proffered testimony does not address how frequently such practices occur, only that they represent a common industry

pattern. Def. MILs at 14. Second, and more importantly, the ruling in *Valencia-Lopez* was premised on the trial court failing to make any reliability findings at all. *Id.* at 898-99 ("Here, the district court made no reliability findings about [the agent's] testimony. . . . Nothing was said about reliability."). As discussed, here, the Court makes express findings that SSA Stewart's training and experience is both relevant, under the facts of this case, and sufficiently reliable "to provide a reliable basis for [SSA Stewart's] expert opinions" as to the modus operandi of schemes involving the payment of kickbacks to body brokers, such as those alleged here.

Defendant also challenges portions of SSA Stewart's proffered testimony as irrelevant under Rules 401 and 402.

As to SSA Stewart's statement that "[s]uch activity was already prohibited under certain state's laws" prior to the enactment of EKRA, the Court finds the statement is relevant to provide context and background to help the jury to understand the breadth of SSA Stewart's training and experience informing his opinions. In other words, SSA Stewart's training and experience investigating conduct prohibited by EKRA began prior to the enactment of EKRA in 2018 because such conduct was *already illegal* under certain state's laws. That experience, and the lessons learned from it, is directly relevant to his testimony on the modus operandi of criminals who engage in such kickback schemes.

Defendant also objects to Agent Stewart's proffered testimony that "treatment facilities involved in kickback schemes sometimes conceal payments by disguising them as payments for 'consulting' services through sham contracts or invoices" because the Indictment does not allege sham consulting contracts. Def. MILs at 16. However, as the Government argues, Defendant cites no case law for the proposition that the scope of modus operandi testimony must be limited, precisely, to the contours of the charged violations in the case at issue. Moreover, the Court AGREES the Indictment's charges that "Defendant [] contracted with entities associated with body brokers to purportedly provide marketing services for La Jolla Recovery, Inc." is sufficient basis to find evidence and testimony as to "sham contracts or invoices" relevant under the facts of this case. ECF No.

1 at 4-5.

Accordingly, the Court FINDS the challenged testimony is admissible pursuant to Rules 401 and 402.

Finally, Defendant seeks to exclude portions of SSA Stewart's testimony as unduly prejudicial under Rule 403.

As the Court has already discussed, SSA Stewart will not offer any opinion about the facts at issue in this case. Thus, the Court finds no basis for Defendant's arguments that SSA Stewart's proffered testimony will risk usurping the role of the jury, that the challenged testimony describing modus operandi schemes amounts to improper "summarizing" of the facts at issue in this case, or that expert testimony as to modus operandi is unnecessary to assist the jury understand the facts at issue in this case such that the minimal probative value of such testimony is substantially outweighed by the risk of unfair prejudice.

Defendant challenges SSA Stewart's expert testimony to the extent he will use "use terms that carry strong pejorative connotations or that contain contested legal conclusions, which invite the jury to adopt the government's characterization before it determines what the evidence shows." Def. MILs at 34. According to Defendant, "these labels have little (if any) probative value beyond what nonpejorative language it would convey, but create a substantial risk of unfair prejudice and confusion." *Id.*

Relatedly, Defendant's second motion in limine also seeks to exclude use of the term "body broker." The Court will address each of the challenged terms in turn.

As to the term "**Kickback**," the Court rejects Defendant's request to exclude the term given that term appears in the statute Defendant is charged with violating. *See* 18 U.S.C. § 220(a)(2) ("Except as provided in subsection (b), whoever, . . . knowingly and willfully . . . pays or offers any remuneration (including any **kickback**, bribe, or rebate).

As to the term "**Body Broker**" the Court rejects Defendant's request to exclude the term under the facts of this case. As discussed in the Government's motion to admit evidence of body broker articles, Defendant himself, both in his statements and in

9

conversations with others, repeatedly used or referred to the phrase "body broker." His use of the term bears directly on the Government's theory that Defendant knew of the unlawful industry practices and knew federal law enforcement were investigating the crimes. Thus, the Court finds the danger of any undue prejudice from the term is substantially outweighed by the probative value of the evidence.

As to the terms "**Corrupt treatment center facility operators**" and **"Schemes to Defraud Healthcare Benefit Programs,**" the Court finds that use of such terms are not improper legal conclusions or improper summations of the facts at issue in this case. This is especially true here given that SSA Stewart will only testify as to the general operations of facility operators illegally involved in kickback schemes contrary to EKRA and not the facts at issue in this case. Although true that the terms may invite the jury to view seemingly innocuous facts through a lens of criminality, such a result is consistent with the purpose and scope of offering modus operandi testimony. *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1244 (9th Cir. 1997) (explaining modus operandi testimony "alerts [the jury] to the possibility that combinations of seemingly innocuous events may indicate criminal behavior"). Ultimately, it will be up to the jury to decide whether Defendant's conduct amounted to the same.

Accordingly, the Court FINDS the challenged testimony is admissible under Rule 403.

For the reasons discussed above, the Court **DENIES** Defendant's first motion in limine seeking to limit SSA Stewart's expert testimony. To the extent Defendant's second motion in limine also seeks to limit SSA Stewart's expert testimony by precluding his use of the term "body broker," the motion is **DENIED** for the same reasons.

### 3. Admit Appropriate Lay Witness Evidence

The Government seeks to admit lay witness testimony from FBI agents and employees, along with "summary exhibits . . . derived from admitted financial records . . . and kickback payments to the body brokers," pursuant to Rule 702 in its case-in chief. USA MILs at 14-15. The Government represents that any summary exhibits will be

3:25-cr-02444-JAH

provided to Defendant by the Court's deadline for noticing trial exhibits. *Id.*

Defendant objects that the Government's motion is premature because the Government has not specifically identified the opinion of any witness that it seeks to admit. Def. Opp'n at 12. In response, the Government represents it anticipates agreeing to a stipulation as to "evidence regarding the extraction and parsing of certain data (such as certain cell phones and from Defendant's iCloud account)" and that it does not oppose the Court deferring a ruling on the admissibility of any lay witness evidence pursuant to Rule 701 until the Government provides more detail regarding the scope of such evidence. USA Reply at 4.

Accordingly, the Court **RESERVES** ruling on the motion.

### 4. Admit Certified Business Records Under Rule 902(11)

The Government broadly seeks to admit "records of regularly conducted activities pursuant to a written declaration of their custodian or other qualified person," pursuant to Rules 902(11) and 803(6), such as medical and financial records. USA MILs at 15. The Government represents "all such declarations have or soon will be provided to Defendant, and the exhibits whose admission will rely on such declarations will be identified in the United States' exhibit list." *Id.*

Although Defendant objects that the Government's motion is premature because the Government has not specifically identified or noticed the records it seeks to admit, Defendant has no objection to the admission of records under Rule 902(11) once the Government complies with the threshold requirements of Rule 902(11).

Accordingly, the Court tentatively **GRANTS** the Government's motion, subject to the Government providing specific notice and complying with the threshold requirement of Rule 902(11), of the records it seeks to admit by the Court's deadline of May 7, 2026.

### 5. Admit Intrinsic Evidence of Recorded Meeting with Defendant (i.e. Intrinsic Evidence of Conspiracy)

The Government seeks to admit witness testimony and excerpts of a recorded conversation between Defendant and coconspirator William Leonard in which they

3:25-cr-02444-JAH

allegedly agreed "to restart working together under the same verbal requirement" as the charged conspiracy where "Knack Media was required to send [Defendant] one out-of-network patient and 4 in-network patients each month to earn payment from Defendant." USA MILs at 16-19.

Although Defendant objects because the recording falls outside the charged conspiracy in that the conversation occurred approximately eight (8) months after the charged conspiracy period,[3] the Government argues the evidence is admissible as direct evidence of the conspiracy and as inextricably intertwined evidence exempt from Rule 404(b)'s requirements. Def. Opp'n at n3; USA MILs at 18-19. The Government also argues "the evidence is admissible under Rule 404(b) as evidence of Defendant's knowledge/intent that a requirement for Knack Media to receive payments from Defendant was to meet his verbally required minimum number of referrals per month." *Id.* at n.14.

Defendant also objects that the Government "has not identified the portions of such testimony it intends to use at trial," without which Defendant cannot assert specific objections to the proffered evidence. Def. Opp'n at 15. In response, the Government represents "it has identified at least most of the portions of the recording it intends to play to the jury in its case-in-chief." USA Reply at nn.3-4.

Here, the Court agrees with the Government that the conversation is direct evidence of the charged conspiracy because it shows the unlawful agreement between Defendant and Patton existed during the conspiracy period. The Court also agrees the evidence is otherwise admissible as inextricably intertwined evidence because it is circumstantial evidence of the general nature of the Defendant's business activity with Knack Media and explains the context in which Defendant's transactions with Knack Media took place. See *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013) (explaining that "evidence

---

[3] The recorded conversation occurred in May 2024, approximately eight (8) months after the charged conspiracy period which spanned from August 2019 through September 2023.

that is necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime" is inextricably intertwined "because the jury cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge").

Thus, the Court **RESERVES** ruling on this motion to permit the Defendant to determine whether he has specific Rule 106 or 403 objections to the recording. To facilitate the Defendant's review, the Government shall produce the entire transcript of the recording to Defendant and the Court and identify the portions of the recording it intends to offer at trial no later than **May 11, 2026**. This ruling does not apply to the testimony of the witness.

### 6. Admit Summary Charts of Voluminous Records

Defendant objects to the Government's motion as premature because it seeks to admit unspecified "summary charts summarizing financial records demonstrating kickback payments from Defendant (or his proxys) to the coconspirators" pursuant to Rule 1006. Def. Opp'n at 15; USA MILs at 19-20. The Government represents it will produce the charts to Defendant "by the Court's deadline for noticing trial exhibits" and does not oppose the Court deferring a ruling on the motion. USA Reply at 6.

Accordingly, the Court **RESERVES** ruling on the motion until the Government produces its summary charts to Defendant, by no later than May 7, 2026, and Defendant has the opportunity to make any specific objections upon review thereof.

### 7. Exclude Evidence or Argument That Insurance Plans Were Negligent

Consistent with the parties' representations that such evidence will not be introduced at trial, the Court **DENIES** the motion as moot. *See* USA MILs at n.16 (recommending the Court denying the motion as moot), Def. Opp'n at 15-16 (agreeing such evidence should not be admissible); USA Reply at 6 (same).

### 8. Exclude Evidence or Argument Regarding Other Acts of Legitimate Provision of SUD Treatment or Claims to Insurers, or Other Good Acts

The Government seeks to preclude argument and evidence of specific acts of good conduct, including evidence that (1) La Jolla Recovery provided legitimate substance use

3:25-cr-02444-JAH

disorder ("SUD") treatment and (2) some insurance claims were legitimate.  USA MILs at 16.  The Government argues that such evidence is not probative of Defendant's alleged crimes and would constitute inadmissible character evidence under Rules 401 and 404(a)(1).  *Id.  Defendant objects that*

It is well-established that "a defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions," such "evidence [is] properly excluded as immaterial."  *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955).  The AGREES with the Government that whether a Defendant engaged in legal, honest conduct some of the time has no relevance to whether the defendant engaged in, or had knowledge of, criminally charged conduct.  *See, e.g.*, *United States v. Ifediba*, 46 F.4th 1225, 1238 (11th Cir. 2022).

Accordingly, the Court **GRANTS** the Government's motion.

### 9.  Exclude Evidence or Argument Regarding Others' Culpability

The Government moves to preclude Defendant from offering evidence or argument that others should have been charged with, or instead of, him or that others are more culpable than he.  USA MILs at 23.

In response, Defendant represents he does not intend to challenge the Government's charging decisions but objects that the motion improperly seeks to "exclude an amorphous category of evidence without specifically identifying any item of evidence or testimony it seeks to exclude."  Def. Opp'n at 19-20.  Defendant also argues this motion should be denied "to the extent" it seeks to preclude him from impeaching the investigation.  *Id*.

Accordingly, consistent with the parties' representations, the Court **GRANTS** the Government's motion.  To avoid ambiguity, the Court clarifies that Defendant may challenge the reliability of the Government's investigation by introducing evidence or argument that questions:

- "whether the government missed important details or failed to pursue leads pointing away from [defendant]," *United States v. Chang*, No. 5:16-cr-00047,

3:25-cr-02444-JAH

2025 WL 2145076, at *6 (N.D. Cal. Jul. 29, 2025);

- The thoroughness of the investigation, *see, e.g.*, *Fontenot v. Allbaugh*, 402 F. Supp. 3d 1110, 1177 (E.D. Okla. 2019);

- Whether the investigation was biased in choosing which leads to pursue, *see, e.g.*, *Keenan v. Bagley*, No. 1:01 CV 2139, 2012 WL 1424751, at *39 (N.D. Ohio Apr. 24, 2012); or,

- Impeach[es] law enforcement witnesses by highlighting mistakes made during the investigation, *see, e.g.*, *United States v. Guanghua*, No. CR 23-091-2, 2026 WL 893968, at *47 (D.D.C. Mar. 29, 2026).

*See generally Kyles v. Whitley*, 514 U.S. 419, 446 (1995).

### 10. Exclude the Use of Law Enforcement Summaries for Impeachment Purposes

The Government moves to preclude Defendant from using law enforcement interview summaries to impeach other witnesses based on prior inconsistent statements of other witnesses, arguing that, absent the witness' review and adoption of the summaries, the statements are not ones made by the witnesses.  USA MILs at 23-25.  For similar reasons, the Government argues Defendant should not be allowed to publish or introduce the contents of such summaries under Rule 613(b).  *Id.*

Although Defendant does not dispute the Government's request, Defendant objects the motion is premature, lacks the requisite specificity, and is so broad that it includes permissible uses of law enforcement reports, such as impeaching a law enforcement witness based on their own report or impeaching a witness if the witness adopts the statement memorialized in the report.  Def. Opp'n at 20-21.

Thus, consistent with the parties representations, Court **GRANTS** the Government's motion.

### 11. Admit Evidence That Defendant Refused to Cooperate with a Court Order to Unlock His Phone

On June 20, 2025, a Magistrate Judge signed an order sealing a search warrant for

15

Defendant's iPhone and ordering "law enforcement agents executing the attached search warrant to compel [Defendant] to unlock any electronic devices that require biometric access subject to seizure pursuant to this warrant, including finger/thumb, facial, or iris recognition features." USA MILs at 25-27 (citing 25mj3461, ECF No. 2). The warrant was authorized in association with Defendant's arrest on the charges at issue in this case and, as a threshold matter, is presumptively valid given that Defendant did not file a motion challenging the validity of the warrant, or otherwise seeking to suppress any evidence obtained therefrom.

Thus, at issue here is the Government's motion to admit testimony that, on the day of his arrest, Defendant refused to allow officers to unlock his phone using facial recognition. After a FBI Agent informed Defendant of the warrant, including the order to unlock his phone through biometric features, and showed him an electronic copy of such warrant, USA MILs at 25-27, the Government contends that the agent's testimony showing that "[Defendant] would not allow agents to scan his face [by] looking away and closing his eyes" is admissible to show consciousness of guilt and the Court may properly "instruct the jury while such conduct at the time of arrest is not sufficient in itself to establish guilt, it may be considered by the jury, in light of all the other evidence in the case, in determining the guilt or innocence of that person." *Id.* (citing *United States v. Wright*, 392 F.3d 1269, 1277-79 (11th Cir. 2004)). Moreover, because the events occurred during the post-arrest period, the Government argues such conduct is not an "other act" under Rule 404(b) but is intrinsic/inextricably intertwined with the charged offenses. *See United States v. Weathers*, 293 F. App'x 502 (9th Cir. 2008).

Defendant's objections in opposition were premised on his understanding that the Government sought to introduce the video recording of Defendant's conduct during the post-arrest period captured on the agent's body-camera footage. *See* ECF No. 39 at 15. And, in essence, Defendant objects he did not refuse to comply with the warrant because officers failed to explain why Defendant was being arrested, failed to disclose to Defendant that officers had a valid warrant authorizing the use of biometric data to search his phone,

16

3:25-cr-02444-JAH

and failed to initially show Defendant the warrant upon request. *Id.*

Defendant contends he requested to see a warrant and the agent indicated she did not have a copy but there was one on site. Defendant was uncooperative in that he avoided screenshots of his facial features.

In its Reply, the Government represents the agent left Defendant in the patrol vehicle, retrieved an electronic copy of the warrant and showed it to Defendant. The warrant presented to Defendant included the Magistrate Judge's order stating the Defendant was to allow a federal agent executing the warrant to compel Defendant to unlock any electronic device that required electronic biometric access subject to seizure per the warrant, including finger, thumb, facial, or iris recognition features. Defendant would not allow the agent to scan his face as he was looking around and closing his eyes after his review of the search warrant. The Government does not intend to offer into evidence body-cam footage of Defendant's refusal to cooperate prior to his review of the warrant unless Defendant opens the door to its need to do so, and intends instead to offer only the agent's testimony regarding Defendant's failure to cooperate once Defendant was made aware of the warrant. USA Reply at 9. The Government also clarifies it only seeks to admit witness testimony of Defendant's conduct during the post-arrest period after the officers turned off their body-camera recordings. *Id.*

Here, the Court finds that after the arrest was accomplished, an FBI Agent attempted to unlock Defendant's cellphone by holding the phone up to his face pursuant to the warrant, but the phone did not unlock.

Given that "[i]t is today universally conceded that the fact of an accused's . . . resistance to arrest . . . and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself," *Marcoux v. United States*, 405 F.2d 719, 721 (9th Cir. 1968) (cited with approval by *United States v. Greiser*, 502 F.2d 1295, 1299 (9th Cir. 1974), the Court AGREES that evidence supporting Defendant's refusal to cooperate with the court Order to unlock his phone at the time of his arrest is admissible to show consciousness of guilt.

Accordingly, the motion is **GRANTED**.

### 12. Admit Evidence of Body Broker Articles

The Government seeks to admit three articles viewed and reproduced by Defendant which concern healthcare and insurance fraud, including schemes related to drug and alcohol rehabilitation centers paying "kickbacks" to "body brokers" who "send them clients with health insurance." USA MILs at 28. Defendant objects that the articles are irrelevant and therefore inadmissible under Rule 403. Def. MILs at 26-28.

Because Defendant viewed and reproduced the articles and the evidence was obtained directly from Defendant's iPhone and iCloud account, the Court AGREES the articles tend to show Defendant knew of the unlawful industry practices and knew federal law enforcement were investigating the crimes.

Accordingly, the Court **GRANTS** the Government's motion, subject to any specific objections offered by Defendant at trial. The Court will issue a limiting instruction as to how the jury should consider the evidence. The parties should submit proposed limiting instructions in addition to other proposed jury instructions.

## II. Defendant's Motions In Limine

### 1. Limit Expert Testimony of FBI SA William Stewart

Defendant's first motion in limine also seeks to limit SSA Stewart's expert testimony based on specific objections to portions of the proffered testimony. Def. MILs at 9-21. This issue was resolved by the Court's ruling on the Government's second motion in limine. Thus, the Court **DENIES** Defendant's first motion to limit SSA Stewart's expert testimony for the same reasons the Court granted the Government's motion.

To the extent Defendant's second motion in limine also seeks to limit SSA Stewart's expert testimony by precluding his use of the term "body broker," the motion is **DENIED** for the same reasons.

### 2. Exclude Use of the Term "Body Broker"

This issue was resolved by the Court's ruling on the Government's second motion

3:25-cr-02444-JAH

in limine.  Consistent with the Court's ruling on the Government's second motion in limine and Defendant's first motion in limine relating to the testimony of SSA Stewart, the Court **DENIES** Defendant's motion to exclude use of the term "body broker."

### 3.  Exclude Expert Legal Opinion Offered By Co-Conspirator

The Government seeks to offer testimony of Terry Patton, a fact witness and alleged co-conspirator, relating to Patton's "[undisclosed] acts covering up [Patton's] violations of EKRA based on [Patton's] understandings of the law."  ECF No. 38 ("USA Opp'n") at 12. The Government argues the testimony is relevant to "a sham contract" allegedly created by Patton and Defendant "for services that were never performed and where payment was instead based solely on the number and quality of patients … that Mr. Patton referred to Defendant."  *Id.*  The Government confirms that Patton is a fact witness, not an expert witness, and that his testimony will "likely include Mr. Patton testifying that he told owners of rehabilitation facilities (like Defendant) of his understanding of arrangements that [legally] violate EKRA."  *Id.*

Defendant objects that such testimony constitutes impermissible lay testimony under Rule 701(c) because it requires specialized legal knowledge and Patton has not been designated as an expert.  Def. MILs at 21-23.  Defendant also objects that the proposed testimony, which Defendant argues is legally incorrect, violates Rule 403 because it is likely to confuse the issues and cause unfair prejudice.  *Id.*

Defendant also objects that the Government has not identified any "acts" Patton took "covering up his violations of EKRA" and that the Government has not produced any document or good faith basis for Patton's proffered testimony.  According to Defendant, the Government has had six substantive communications with Patton regarding his actions: five interviews and one letter Patton wrote describing True Help and his own conduct. Defendant represents that in four of those communications, Patton asserts he believed his conduct was legal at the time he was marketing for facilities.  In one of those communications, Patton opined that, with the benefit of hindsight, his conduct was not compliant with EKRA, and in one interview the Government did not ask him about the

19

topic.  Thus, Defendant argues:

> Patton has consistently told the government that he believed he was not violating EKRA at the time of the conduct at issue, and he has never told the government that he attempted to cover anything up. If he believed at the time of his conduct that he was in compliance, he would have had no reason to take any actions covering up his conduct. It is unclear what basis the government has to now claim that he will testify that he ever attempted to cover up anything.

ECF No. 44 ("Def. Reply") at 10.

Because Patton is a fact witness, the Court **AGREES** with Defendant that, under Rule 701(c), Patton is not qualified to provide any legal conclusions, regardless of whether that knowledge is accurate.  As a named coconspirator and fact witness, Patton can only testify as to the nature of any conspiratorial agreement with Defendant and any admissible evidence relating thereto.  It is neither proper nor sufficient for the Government to rely on a limiting instruction from the Court or the Court's jury instructions to avoid Defendant's Rule 403 concerns that such testimony would confuse the jury and to ensure that the jury properly understands the relevant law.

Accordingly, the Court **GRANTS** Defendant's motion, pursuant to Rules 701(c) and 403, to prevent Patton from offering lay witness testimony relating to his understanding of the law.

### 4. Exclude Evidence of Other Acts By Co-Conspirators

The Court **GRANTS** Defendant's motion to exclude evidence of other acts by coconspirators to the extent Defendant's motion is consistent with the parties' representations and agreement that plea agreements can come in on direct examination to impeach, but not to prove Defendant's guilt.

### 5. Exclude Cross-Examination as to Unproven Prior Conduct

If Defendant chooses to testify at trial, the Government seeks to introduce evidence of unspecified allegations of fraud against Defendant to impeach Defendant's character for truthfulness.

20

3:25-cr-02444-JAH

The Court **RESERVES** ruling on Defendant's motion until trial to determine whether the Defendant's testimony has opened the door to such cross-examination.

### **CONCLUSION**

For the reasons stated above, the Court HEREBY ORDERS:

1. The Court **RESERVES** ruling on the Government's Motion to Admit Coconspirator Statements.

2. The Government's Motion to Admit Properly Noticed Expert Evidence from SSA Stewart is **GRANTED**.

3. The Court **RESERVES** ruling on the Government's Motion to Admit Appropriate Lay Witness Evidence.

4. The Government's Motion to Admit Certified Business Records Under Rule 902(11) is **GRANTED**.

5. The Government's Motion to Admit Intrinsic Evidence of Recorded Meeting with Defendant is **GRANTED**.

6. The Court **RESERVES** ruling on the Government's Motion to Admit Summary Charts of Voluminous Records.

7. The Government's Motion to Exclude Evidence or Argument that Insurance Plans were Negligent is **DENIED**.

8. The Government's Motion to Exclude Evidence or Argument Regarding Other Acts of Legitimate Provision of SUD Treatment or Claims to Insurers, or Other Good Acts is **GRANTED**.

9. The Government's Motion to Exclude Evidence or Argument Regarding Others' Culpability is **GRANTED**.

10. The Government's Motion to Exclude the Use of Law Enforcement Summaries for Impeachment Purposes is **GRANTED**.

11. The Government's Motion to Admit Evidence that Defendant Refused to Cooperate with a Court Order to Unlock His Phone is **GRANTED**.

3:25-cr-02444-JAH

12. The Government's Motion to Admit Evidence of Body Broker Articles is **GRANTED**.

13. Defendant's Motion to Limit Expert Testimony of FBI SA William Stewart is **DENIED**.

14. Defendant's Motion to Exclude Use of the Term "Body Broker" is **DENIED**.

15. Defendant's Motion to Exclude Expert Legal Opinion Offered By Co-Conspirator is **GRANTED**.

16. Defendant's Motion to Exclude Evidence of Other Acts By Co-Conspirators is **GRANTED**.

17. The Court **RESERVES** ruling on Defendant's Motion to Exclude Cross-Examination as to Unproven Prior Conduct.

**IT IS SO ORDERED.**

DATED: May 1, 2026

_____

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE

3:25-cr-02444-JAH